

FILED

SEP 20 2013

Clerk, U.S District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| UNITED STATES OF AMERICA, | Cause No. CR 11-027-M-DWM |
|---|---|
| Plaintiff/Respondent, | CV 12-104-M-DWM |
| vs. | ORDER |
| DAVID DWAIN SLEDGE, | |
| Defendant/Movant. | |

On June 19, 2012, Defendant/Movant David Sledge ("Sledge"), acting without counsel, filed a motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. Sledge also filed a motion for credit for time served. While Sledge is a federal prisoner proceeding pro se, he is currently serving time at Montana State Prison on a state conviction. Following appointment of counsel on October 18, 2012, Sledge is now represented by attorney Jeffrey M. Roth.

1

## I. Background

In August 2008, Sledge's stepdaughter invited a friend on a camping trip in Glacier National Park. Sledge provided both girls with a bottle of Everclear, then photographed them in sexually explicit poses.

In June 2009, another girl reported to police that Sledge exposed his penis to her several times when she was staying overnight with Sledge's stepdaughter. State authorities began an investigation. When they discovered that Sledge had engaged in sexual crimes involving his stepdaughter and several other girls, Sledge was charged in a Montana state court. He was arrested on or about April 7, 2010, and was convicted of one count of sexual assault and four counts of indecent exposure. On December 2, 2010,[1] Sledge was sentenced to a total prison term of forty years, with 32 years suspended. Presentence Report ¶ 31. The state judgment restricted Sledge's eligibility for parole until he completed two phases of sex offender treatment in prison. *See* Letter Feb. 2, 2012 (doc. 59-2), at 1. The state sentence was calculated as commencing on April 7, 2010. *See* State Sentence Calculation (doc. 60-1 Ex. A) at 1.

---

[1] The Presentence Report gives the state sentencing date as December 2, 2010. Sledge gives the date as December 15, 2010. *Compare* Presentence Report ¶ 31 *with* Am. § 2255 Mot. (doc. 59) at 2. Presumably the discrepancy lies between pronouncement of sentence in open court and the subsequent entry of the written judgment. But the discrepancy is not relevant here.

In the course of the state investigation, the photographs Sledge had taken in August 2008 were found. On May 4, 2011, Sledge was indicted in this Court on two counts of sexual exploitation of children. A warrant was issued. Sledge was arrested at Montana State Prison on the federal warrant on June 17, 2011. Return (doc. 15) at 1. Pursuant to a plea agreement, on August 30, 2011, Sledge pled guilty to Count 2, and the United States agreed to dismiss Count 1.

On December 21, 2011, Sledge appeared for sentencing. He faced a fifteen-year statutory mandatory minimum. 18 U.S.C. § 2251(e). Sledge's attorney, Federal Defender Michael Donahoe, advocated for a sentence concurrent with the state sentence. He also asked that Sledge's federal sentence be adjusted to reflect time spent in state custody prior to being taken into federal custody:

> Under USSG § 5G1.3(b) the Court should adjust the defendant's sentence downward 14 months to account for the total incarceration time defendant has already served state-side. . . .
> Defendant was in pre-trial or pre-sentencing Flathead County custody in his State case for approximately 8 months. Thus, defendant should be awarded 14 months credit for State time already served: December, 2010 to June, 2011 at Montana State Prison plus 8 months pre-trial county time equals 14 months.

Def. Sentencing Mem. (doc. 32) at 3 & n.1.

Sledge's request for a concurrent sentence was rejected, but his argument under U.S.S.G. § 5G1.3 for credit for time served was accepted:

3

> [I]t's my judgment that, while I believe the Government's recommendation is appropriate, that a 210-month sentence is appropriate in this case, I am going to exercise my discretion under 5G1.3 and account for the credit that he would get.
>
> I'm not going to run the sentences concurrently. I am going to reduce the 210 months to 196 months, which will run consecutively with the State sentence.

Sentencing Tr. (doc. 47) at 30:19-31:2. In addition to 196 months in federal prison, consecutive to the state sentence, Sledge will serve a life term of supervised release. *Id.* at 31:3-4; Judgment (doc. 38) at 2-3.

Because Sledge did not appeal, his conviction became final fourteen days after the entry of judgment, that is, on January 4, 2012. Fed. R. App. P. 4(b); *Gonzalez v. Thaler*, __ U.S. __, 132 S. Ct. 641, 653-54 (2012). Sledge timely filed his § 2255 motion on June 19, 2012. 28 U.S.C. § 2255(f)(1).

## II. Claims and Analysis

Although Sledge's current counsel advances only one claim, Sledge's pro se submissions assert that Donahoe performed ineffectively in several respects. *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims alleging ineffective assistance of counsel. First, Sledge must show that counsel's performance fell below an objective standard of reasonableness. *Id.* at 687-88. Second, he must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a

4

probability sufficient to undermine confidence in the outcome." *Id.* "[T]here is no reason for a court deciding an ineffective assistance claim . . . even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

### A. Additional Six Months' Credit

Sledge argues that Donahoe unreasonably failed to request credit for the six-month period between Sledge's arrest on the federal warrant on June 17, 2011, and his sentencing on December 21, 2011. Am. § 2255 Mot. (doc. 59) at 5-6; Mot. for Credit for Time Served (doc. 42) at 1-6.

Sledge's case was governed by U.S.S.G. § 5G1.3(c). *See* Presentence Report ¶¶ 17-27; Sentencing Tr. at 7:1-11:16. Subsection (c) does not confer a right to the same credit as subsection (b) does:

> **Downward Departure.** – Unlike subsection (b), subsection (c) does not authorize an adjustment of the sentence for the instant offense for a period of imprisonment already served on the undischarged term of imprisonment. However, in an extraordinary case involving an undischarged term of imprisonment under subsection (c), it may be appropriate for the court to downwardly depart. This may occur, for example, in a case in which the defendant has served a very substantial period of imprisonment on an undischarged term of imprisonment that resulted from conduct only partially within[2] the relevant conduct for the

---

[2] Application Note 2(A) provides that § 5G1.3(b) applies only "in cases in which *all* of the prior offense" is relevant conduct and resulted in an increase in the offense level under Chapters Two or Three. Otherwise, § 5G1.3(c) applies. Here, *none* of the state charges were relevant conduct

instant offense. In such a case, a downward departure may be warranted to ensure that the combined punishment is not increased unduly by the fortuity and timing of separate prosecutions and sentencings. Nevertheless, it is intended that a departure pursuant to this application note result in a sentence that ensures a reasonable incremental punishment for the instant offense of conviction.

U.S.S.G. § 5G1.3 Application Note 3(E).

Sledge's sentence complied with this note, but six additional months' credit would not comply with it. Whether Sledge's case was "extraordinary" or involved "a very substantial period of imprisonment" before the federal prosecution was doubtful, but the doubt was resolved in Sledge's favor. Fourteen months represented the period from Sledge's arrest to his appearance in this Court. Def. Sentencing Mem. at 3 n.1. To put it another way, there was a 14-month hiatus in pursuit of the federal charges, simply because the state prosecution occurred first. *See* Sentencing Tr. at 7:6-14, 10:21-11:1 (citing *United States v. Marler*, 527 F.3d 874 (9th Cir. 2008)), 14:10-13, 14:22-15:20. Therefore, 14 months is the period of time that was due to "the fortuity and timing of separate prosecutions and sentencings." The federal prosecution itself took six months. It would have taken six months regardless of which prosecution occurred first. Section § 5G1.3(c) does not contemplate credit for Sledge for those six months, because they were not due to the fortuity and timing of

---

under Chapters Two or Three. Application Note 3(E) could have been construed to deny Sledge credit for the fourteen months he was actually credited.

the separate state and federal prosecutions.

Counsel's performance was not unreasonable, because the amount of time he requested was consistent with the law under U.S.S.G. § 5G1.3(c), whereas an additional six months' credit was not. Further, Sledge suffered no prejudice, particularly in view of the fact that fourteen months' credit was already a rather questionable legal proposition. This claim is denied.

**B. Claims Made Prior to Counsel's Appointment**

Sledge's remaining claims, which he filed pro se, require little discussion. First, in a "narrative" attached to the petition, Sledge asserts he was not guilty. He says "there was found no proof to connect me in any way to an interest, involvement or activity pertaining even in part with child pornography." Mot. Supp. (doc. 40-1) at 2; *see also id.* at 5, 8-9. Sledge explains that, when counsel said, "They have 2 pictures as proof," he responded, "Pictures yes, exposure yes, child porn no!" *Id.* at 9. Under federal law, this is like saying one plus one equals zero. It is not true. A photograph lasciviously displaying the genitals of a nude girl in a bathtub is, by definition, child pornography. 18 U.S.C. § 2256(1), (2)(A)(v), (5), 8(A). The prosecution is not required to prove the defendant intended to make child pornography for distribution to others. The terms in which Sledge protests his

7

innocence prove beyond a shadow of a doubt that he was guilty.[3] *E.g.*, Mot. Supp. at 2-3. To the extent Sledge seeks relief based on "actual innocence," Mot. Supp. at 9, his claim is denied.

Prosecution for one offense by two separate sovereigns, that is, the State of Montana and the United States, does not constitute double jeopardy. *Heath v. Alabama*, 474 U.S. 82, 88 (1985); *United States v. Wheeler*, 435 U.S. 313, (1978), *followed in United States v. Lara*, 541 U.S. 193, 210 (2004). And, at any rate, Sledge was prosecuted by separate sovereigns for different offenses. This claim, Mot. § 2255 (doc. 40) at 4 ¶ 12A, is denied.

Sexually exploiting children by making child pornography is a federal crime, regardless of whether it occurs in Glacier National Park or not, *cf. United States v. Gallenardo*, 579 F.3d 1076, 1081 (9th Cir. 2009), and, at any rate, Sledge was not charged in Missoula County but in this Court, the United States District Court for the District of Montana. This claim, Mot. § 2255 at 4 ¶ 12B, is denied. To the extent Sledge suggests a change of venue from the Missoula Division to the Great Falls Division was mandatory, he is mistaken. "[W]here a district contains more than one division," trial must be held "in the division where the offense was committed, unless

---

[3] His statements in the § 2255 motion, of course, were not the evidence that proved him guilty in the criminal case. But the statements completely contradict any possible claim that he did not commit the crime of which he was convicted.

8

the accused consents to be tried in another." *Salinger v. Loisel*, 265 U.S. 224, 237 (1924). As for the wisdom of counsel's consent to proceed in the Missoula Division, Sledge fails to show any prejudice. This claim, Mot. § 2255 at 4 ¶ 12A, is denied.

Sledge's complaint about "constant conflict" and "lack of adequate communication" with Donahoe, *id.* at 4 ¶ 12A; *see also, e.g.*, Mot. Supp. (doc. 40-1) at 4, is not legally significant. He was not entitled to a "meaningful relationship" with counsel. *Morris v. Slappy*, 461 U.S. 1, 13-14 (1983). Further, although he claims Donahoe wrongly advised him that he could not receive concurrent sentences and would be sentenced to thirty years in prison even if he accepted a plea bargain, Mot. Supp. at 5, the record plainly shows otherwise, Change of Plea Tr. (doc. 46) at 8:18-21, 16:19-18:17. Nor was Sledge prejudiced by that advice, even if it had been given. Donahoe did his best to obtain a concurrent sentence, but the circumstances of Sledge's offense – especially his insistence that he did not sexually exploit anyone, *e.g.*, Sentencing Tr. (doc. 47) at 26:2-8 – demanded a consecutive sentence. Further, the advisory guideline range would have been 292-365 months if Sledge had been convicted at trial, as he certainly would have been. Presentence Report ¶¶ 25-26, U.S.S.G. Ch. 5 Part A (Sentencing Table); Change of Plea Tr. at 23:15-25:4. Finally, Sledge's own allegations, *see* Mot. Supp. at 5-7, 8-9 (regarding letters to prosecutor), prove he was not prejudiced by counsel's allegedly deficient performance. This

claim, Mot. § 2255 at 4 ¶ 12A, is denied.

Sledge did not receive erroneous advice about his eligibility for federal parole. Change of Plea Tr. at 11:20-12:4. As to his state parole, even assuming he did not realize he would not be able to complete two phases of sex offender treatment at Montana State Prison before February 2012, *see* Sentencing Tr. at 16:1-4, a reasonable person would not choose to risk conviction at trial on two counts, which could both run consecutively to each other and to the state sentence, as well as a three-level increase in the offense level, merely because parole from the state to the federal sentence would not occur as quickly as previously believed. *See Hill v. Lockhart*, 474 U.S. 52, 59-60 (1985). This claim, Mot. § 2255 at 4 ¶ 12A, is denied.

Finally, Sledge's supplement includes some language which might be construed to allege that Donahoe did not tell him about all available plea offers. Mot. Supp. at 11. The United States was ordered to file all of its plea offers. Order (doc. 62) at 1-2. It made only one offer. Sledge plainly knew about that one, because he accepted it, with the two changes noted by the United States. *See* AUSA Peterson Aff. (doc. 63) at 2 ¶¶ 3-5; *compare* Proposed Plea Agreement (doc. 63-1) at 2 ¶ 2, *with* Plea Agreement (doc. 19) at 2-3 ¶ 2. Although Sledge claims Donahoe said he was "pretty certain" he could get the United States to agree to a charge of possession instead of receipt, Mot. Supp. at 11, it is clear that Sledge cannot show prejudice, as

the United States did not accept Donahoe's counteroffer, AUSA Peterson Aff. at 2 ¶ 4. This claim, to the extent it is one, is denied.

### C. New Claims

Sledge's counsel notes that Sledge makes two additional claims. Sledge claims his state sentence is illegal to the extent it requires him to complete two phases of sex offender treatment before he can be paroled to his federal sentence. Am. § 2255 Mot. (doc. 59) at 5. Aside from lacking any conceivable merit, this claim cannot be considered in a motion filed in a federal case under 28 U.S.C. § 2255. Sledge also claims counsel was ineffective because he failed to challenge application of U.S.S.G. § 4B1.5(b)(1). Am. § 2255 Mot. at 5; *see also* Presentence Report ¶ 23. He does not give any reason why that guideline should not have applied. It did apply. *See* Presentence Report ¶ 31; 18 U.S.C. §§ 2244, 2246(3), 2426(b)(1)(B); U.S.S.G. § 4B1.5 Application Notes 2, 4(A)(i), (B).[4] These claims are denied.

### V. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it

---

[4] Although it may not be necessary, because Sledge's stepdaughter asserted that he touched her in a sexually inappropriate manner on more than one occasion, it is worth noting that the crime of conviction may be counted as one of the two required "occasions" establishing a pattern of activity involving prohibited sexual conduct under this guideline. *See United States v. Broxmeyer*, 699 F.3d 265, 286 (2d Cir. 2012). Thus, Sledge was convicted of two qualifying "occasions," one in state court, involving prohibited sexual conduct with his stepdaughter, and a separate one in this Court, involving the production of child pornography.

enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

None of Sledge's claims meets the required standard. Counsel was not ineffective in failing to request an additional six months' credit against the federal sentence because U.S.S.G. § 5G1.3(c) did not support an award of that credit. Even if Sledge did not intend to distribute the photos he took, he sexually exploited the victims by photographing them in lascivious display of their pubic areas. Prosecution by the State of Montana for certain offenses and prosecution by the United States for a different offense does not constitute double jeopardy. Jurisdiction lay in federal court in the District of Montana, regardless of venue, Sledge's counsel consented to venue in the Missoula Division, and Sledge can show no prejudice from that consent. Even assuming Sledge's counsel told him he could only be sentenced to thirty years on top of his state sentences, he was not prejudiced by that advice, because counsel

did his best to obtain a concurrent sentence, and no reasonable person in Sledge's position would have risked conviction on two counts and a three-level increase in the offense level. In addition, even assuming counsel wrongly advised Sledge about when he would be eligible for state parole, again, no reasonable person in Sledge's position would have chosen trial over a guilty plea. Sledge was given only one plea offer, and, with two limited amendments, he accepted it. Finally, Sledge cannot challenge an unrelated state sentence in a motion under 28 U.S.C. § 2255, and he offers no basis on which counsel could have challenged application of the plainly applicable U.S.S.G. § 4B1.5(b)(1).

There is no reason to encourage further proceedings in this matter. Sledge makes no claim with any substance to it. He has had every opportunity to show merit in any claim. He cannot do so. A COA is not warranted.

Accordingly, IT IS HEREBY ORDERED as follows:

1. All claims having been denied, Sledge's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255, his motion for credit for time served, and his amended § 2255 motion (docs. 40, 42, 59) are DENIED.

2. A certificate of appealability is DENIED. The Clerk of Court shall immediately process the appeal if Sledge files a Notice of Appeal.

3. The Clerk of Court shall ensure that all pending motions in this case and in CV 12-104-M-DWM are terminated and shall close the civil file by entering judgment in favor of the United States and against Sledge.

DATED this 20th day of September, 2013.

/s/ Donald W. Molloy
Donald W. Molloy
United States District Court